***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement, incorporated herein by reference, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. This is a case of admitted compensability for bilateral carpal tunnel syndrome.
2. Plaintiff's average weekly wage is $274.33, yielding a compensation rate of $182.90.
3. Plaintiff was paid temporary total disability benefits from March 28, 2001, through the approval of a Form 24 by the Industrial Commission on July 26, 2001.
4. On March 11, 2002, the Commission issued an Order granting plaintiff an independent medical evaluation with Dr. Joel Krakauer.
5. Plaintiff did not appeal the approval of the Form 24 within fifteen (15) days.
6. All parties are properly before the Commission, and the Commission has jurisdiction over the subject matter.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was forty years old and possessed a ninth grade education. For most of her adult life, plaintiff has worked in factory jobs.
2. Plaintiff began her employment with defendant-employer in approximately 1998 as a sewing machine operator.
3. Plaintiff utilized her hands continuously and repetitiously. Her hands began hurting in the year 2000.
4. Plaintiff filed a Workers' Compensation claim in connection with her complaints.
5. Pursuant to a Form 60, Defendants accepted compensability of plaintiff's claim for bilateral carpal tunnel syndrome with a date of injury of January 9, 2002. Defendants have paid medical and indemnity benefits as appropriate. There are no unpaid medical expenses.
6. On January 17, 2001, plaintiff presented to Dr. May of the Boise Willis Clinic. Plaintiff was diagnosed with bilateral carpal tunnel syndrome. Plaintiff was referred to Frederick Park, M.D., in 2001.
7. Dr. Park first saw plaintiff on or about March 12, 2001. At that time, plaintiff gave a history of bilateral hand problems that were worse on the right than the left. Dr. Park's impression was carpal tunnel syndrome. He performed a right carpal tunnel release on April 10, 2001.
8. Plaintiff reported to Dr. Park a very good result from her right carpal tunnel release. Plaintiff still had some discomfort and pain of the middle finger, but the majority of the pain was diminished as of April 10, 2001, twelve days post surgery. Although she did obtain some residual numbness, Dr. Park testified this was normal following this procedure. All in all, Dr. Park believed the operation was a success. Plaintiff communicated her satisfaction with the procedure.
9. Accordingly, Dr. Park performed left carpal tunnel release on May 25, 2001. Plaintiff testified at the hearing that after both surgeries, she still had numbness and tingling in both hands. Overall, her hands were a little better, but still hurt.
10. By June 18, 2001, two to three weeks after plaintiff's surgery, plaintiff complained about pain in her left arm. Dr. Park indicated this pain was not related to her carpal tunnel syndrome. Dr. Park released plaintiff to return to work without restrictions as of June 18, 2001.
11. Plaintiff returned to Dr. Park on September 17, 2001. Dr. Park did not feel any further treatment was required at that time; nor did he place any restrictions upon plaintiff's ability to work. Dr. Park remained of the opinion that plaintiff had reached maximum medical improvement, despite not having conducted any tests. Dr. Park did indicate that Plaintiff was free to follow up with him if needed. Dr.Park has never refused to see Plaintiff.
12. Plaintiff has not asked to return to Dr. Park since September 2001; however, the Full Commission finds her decision not to return to him to be reasonable considering his actions.
13. Plaintiff testified at the hearing before the Deputy Commissioner that she continues to have aching in her left hand, which hurts up to her elbow, and a little tingling in her right hand.
14. Defendants filed a Form 24 based upon plaintiff's release to unrestricted work. The Industrial Commission approved the Form 24 on July 26, 2001. Plaintiff did not contest the approval of the Form 24 within fifteen days as required by the Industrial Commission Rules. Defendants paid temporary total disability benefits to plaintiff until the Form 24 was approved.
15. On March 11, 2002, the Executive Secretary's Office of the North Carolina Industrial Commission, issued an order allowing plaintiff an independent medical evaluation by Dr. Joel D. Krakauer, M.D., a board-certified Orthopedic Surgeon practicing with Raleigh Orthopedic Clinic, who specializes in the treatment of hands.
16. On April 10, 2002, Dr. Krakauer conducted an independent medical evaluation. At the time of the examination, plaintiff complained of numbness, tingling and pain in the fingers of both hands. Her pain extended up the shoulder and all the way to the neck. The pain was worse at night, and also worsened when plaintiff used her hands in an elevated position, such as driving a car. She also reported dropping objects frequently.
17. Dr. Krakauer noted small incisions of about 1.5 cm in the palms of each hand. He stated that plaintiff's tinel's sign was positive, an indicator of median nerve irritability in the wrist. From the medical records, it does not appear Dr. Park ever conducted a tinel's test or other nerve testing after plaintiff's surgeries. Dr. Krakauer observed weakness in the thumbs, which is also an indicator of long-standing median nerve problems.
18. Dr. Krakauer noted that plaintiff exhibited ongoing evidence of carpal tunnel syndrome, which was persistent in nature. Dr. Krakauer believed that plaintiff needed further treatment. It was his recommendation that an EMG be conducted on both hands.
19. Despite plaintiff's complaints of weakness in her hands, interruption of sleep at night, and pain in her left arm, and in spite of two surgeries performed in March and May of 2001, Dr. Park stated in response to a form from The Hartford mailed on October 18, 2001, that plaintiff had no permanent injury, no restrictions and had been discharged as a patient.
20. After release by Dr. Park, plaintiff still felt significant pain in her left hand and arm. She also felt some pain in her right hand. Plaintiff was concerned about her ability to do her job as a sewing machine operator, but was willing to try a return to work despite her continued pain. Plaintiff was unable to return to work with her employer because of a lack of work.
21. Dr. Krakauer believed that because of plaintiff's ongoing hand pain, including weakness and numbness, plaintiff should be limited to only fine motor use of the hands with any job that plaintiff performed. Additionally, Dr. Krakauer recommended she lift no more than five pounds with either hand, and avoid repetitive flexion and extension-type motion of the wrist and digits. Dr. Krakauer also recommended a functional capacity evaluation in order to get more detailed information concerning plaintiff's limitations. Previously, Dr. Park would not conduct a functional capacity evaluation.
22. Because of her continuous pain in her hands and her limited education, plaintiff has not been able to find work since the employer terminated her. Given plaintiff's limited education and the limitations prescribed by Dr. Krakauer, plaintiff cannot do the type of work that she previously did, and is having much difficulty finding work. She continues to feel significant pain in her left hand and some pain in her right hand, and would benefit from additional medical treatment.
23. From his testimony, it appears Dr. Park now believes that a functional capacity evaluation may be necessary and that further medical treatment would be helpful.
24. Greater weight is assigned to the medical opinion of Dr. Krakauer with respect to plaintiff's need for treatment, as opposed to the opinion of Dr. Park. Dr. Krakauer conducted tests and an evaluation and found carpal tunnel symptoms have persisted. Dr. Park did not conduct any tests of plaintiff after the last surgery and did not respond to plaintiff's complaints of pain in any manner, choosing instead to release her from treatment. The recommended treatment procedures of Dr. Krakauer may give plaintiff relief from the pain she continues to experience as a result of her originally-admitted compensable injury, and will also help to determine her residual functional capacities.
25. Plaintiff seeks approval of Dr. Joel Krakauer as her treating physician. The Full Commission finds that good grounds exist for approval of this request. The request has been made within a reasonable time of plaintiff seeing Dr. Krakauer for an independent medical evaluation. Dr. Park effectively terminated his treatment of plaintiff by releasing her.
26. Based on the evidence of record, the Full Commission finds that Dr. Park erred in releasing plaintiff to return to work. Dr. Park neither took into consideration plaintiff's reports of continued pain, nor performed objective tests to determine her condition. Thus, the Form 24 terminating the payment of compensation to plaintiff on July 26, 2001, was improvidently granted.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to have defendant pay for medical treatment if such treatment serves to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
2. An injured employee has the right under the Workers' Compensation Act, to seek necessary medical treatment for a compensable injury from a physician of her choosing after the physician chosen by the carrier ceases to care for an injured worker. See Ruggery v. N.C. Dept. of Corrections,135 N.C. App. 270, 520 S.E.2d 77 (1999).
3. Plaintiff is entitled to medical treatment by Dr. Krakauer, which is likely to effect a cure, give relief, or lessen plaintiff's disability. Additionally, for the purpose of performing necessary and reasonable medical treatment, plaintiff is entitled to have Dr. Joel Krakauer designated as her treating physician. Id.; N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Plaintiff is entitled to temporary total disability benefits from July 26, 2001, the date her compensation was terminated by Form 24, and continuing until further order of the Commission. A plaintiff may show disability by presenting evidence that she is capable of some work but that it would be futile to seek other employment because of preexisting conditions (i.e., age, inexperience, lack of education). Given plaintiff's lack of education and the limitations recommended by Dr. Krakauer, it is futile for plaintiff to see other employment until a change in her condition. See Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993); N.C. Gen. Stat. §§ 97-2(9) and 97-29.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Joel Krakauer, M.D., is designated as plaintiff's treating physician.
2. Defendants shall pay necessary and reasonable medical expenses for the services provided by Dr. Krakauer, including but not limited to office visits, an EMG, and a functional capacity evaluation. Defendants shall also pay for surgery upon plaintiff's right and/or left hand, if deemed necessary by Dr. Krakauer.
3. Defendants shall pay weekly temporary total disability compensation to plaintiff in the amount of $182.90 per week from July 26, 2001, and continuing until further Order of the Commission, subject to the attorney's fee awarded below. Because a portion of this award has accrued, such portion shall be paid to plaintiff in a lump sum.
4. Defendants shall pay directly to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of all compensation awarded to plaintiff. Fees based on any compensation that has accrued shall be paid in a lump sum. Thereafter, defendants shall pay directly to plaintiff's counsel every fourth check of compensation due plaintiff.
5. Defendants shall pay the costs.
This 28th day of October 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER